UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ROBERT POLLARD, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-4638 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| THOMAS DART, in his individual capacity, | ) | |
| DR. JOHN DOE 1, in her individual capacity, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| TARRY WILLIAMS, in his individual | ) | |
| capacity, DR. KHADEER AHMED, in his | ) | |
| individual capacity, DR. OLAREWAJU, in his | ) | |
| individual capacity, and DR. JOHN DOE 2, in | ) | |
| his individual capacity | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Robert Pollard, brings this action against defendant Wexford Health Sources, Inc. alleging that it deprived Pollard of his constitutional rights by failing to provide him with timely medical services while he was incarcerated. Wexford now moves for summary judgment. For the reasons set forth herein, that motion is granted.

**Background**

The following facts are undisputed unless otherwise noted. Defendant Wexford Health Sources, Inc. ("Wexford") provides certain medical staffing and healthcare services for the Illinois Department of Corrections. Pollard began seeking treatment for left wrist pain at least as early as 2012. In early 2013, Pollard discovered that he had significant arthritis in his left wrist. Pollard was incarcerated in Cook County Jail in August of 2014, and in December of that year, he was seen by Dr. Kapotas at Cook County Stroger Hospital. At that time, he was placed in a wrist brace and referred to orthopedics for possible surgery. Shortly thereafter, he was seen by Dr. Wysocki, an

1

orthopedic surgeon, who recommended wrist surgery for advanced arthritis. Dr. Wysocki scheduled a surgery for later that month, but the surgery was cancelled.

In January of 2015, Pollard was transferred from the Cook County Jail to the Statesville Correctional Center. The day after his arrival, Pollard received an x-ray of his left wrist and was referred to another orthopedic surgeon, Dr. Pulluru, who saw him the following month. Dr. Pulluru determined that Pollard had severe arthritis and recommended surgery. In March, Pollard went back to Dr. Wysocki, who scheduled a proximal row carpectomy procedure for the end of the month. The scheduled surgery again did not occur at the end of March. In May, Pollard was prescribed Tylenol 3 to alleviate his wrist pain, and he alleges that this still did not relieve him of his pain or allow him normal use of his left hand.

In June of 2015, Pollard was transferred to Shawnee Correctional Center. In July, Pollard was approved for a consultation with an external orthopedic specialist, Dr. Young, with whom Pollard met in August. At that meeting, Pollard and Dr. Young elected to proceed with surgery, which was scheduled for October. However, the surgery was rescheduled for November after Pollard was hospitalized for an unrelated issue. The wrist surgery ultimately took place on November 3, 2015.

Pollard could have received either a proximal row carpectomy or a fusion procedure to alleviate his wrist pain. Pollard and Dr. Young elected to use the former procedure, which would preserve greater flexibility in the wrist. Either option would have likely caused Pollard to lose some mobility in his wrist. Pollard contends that between the time when he was initially scheduled for surgery and the date the procedure actually occurred, he was facing a serious medical condition and suffered from severe pain. He also continues to suffer severe pain because of the procedure. Pollard subsequently filed suit against Wexford and other defendants, alleging that they failed to timely and

adequately address his requests for medical care in violation of the Eighth Amendment, and that this failure presented a substantial risk of serious harm to his health.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016). In determining whether or not a genuine issue of material fact exists, this Court must view the evidence and draw all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Discussion**

Deliberate indifference to a prisoner's serious medical needs violates the cruel and unusual punishments clause of the Eighth Amendment. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 101, 104 (1976)). A plaintiff alleging that a prison official acted with deliberate indifference to a serious injury or medical need must show that an objectively serious injury or medical need was deprived, and that the official knew that the risk of injury was substantial but still failed to take reasonable measures to prevent it. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). When a plaintiff alleges that medical services were delayed, the plaintiff must also place in the record 'verifying medical evidence' demonstrating that the delay had a detrimental effect. *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996)); *see also Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007) (discussing the "verifying evidence" requirement).

To make a showing that a prison official was deliberately indifferent to a prisoner's medical needs, a plaintiff must show that the official was aware of the risk of injury or harm but disregarded

3

the risk nonetheless. *Chapman*, 241 F.3d at 845. Negligence, and even gross negligence, is not sufficient for liability; rather, an official may only be liable if the conduct is intentional or criminally reckless. *Id.* Failing to provide treatment for a serious medical need, or intentionally interfering with treatment once it is prescribed, may constitute deliberate indifference. *Id.*

Corporate entities may also be liable for Eighth Amendment violations when they maintain a policy or practice that deprives prisoners of their constitutional rights. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663, n.7 (1978). The Supreme Court explained in *Monell v. Department of Social Services* that corporate liability is grounded upon a policy or practice that is the direct cause or moving force behind a constitutional violation. *Monell*, 436 U.S. at 663, n.7. Liability does not attach based upon a theory of respondeat superior. *Id.*; *see also Pyles v. Fahim*, 771 F.3d 403, 409-10 (7th Cir. 2014).

To recover on a deliberate indifference claim against a corporate entity, plaintiffs must allege that their constitutional injury was caused by a corporate policy, custom or practice. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). Plaintiffs can demonstrate that such a policy, custom or practice existed in three different ways. First, a plaintiff may present evidence that a corporate defendant maintained an express policy that would cause a constitutional violation when enforced. *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012). A plaintiff may also present evidence of a widespread practice that is 'so permanent and well-settled that it constitutes a custom or practice'. *Id.* (quoting *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). Finally, a plaintiff may allege that the constitutional injury was caused by an individual with final policymaking authority. *Id.*

In this case, Pollard does not allege that Wexford maintained an express policy that deprived him of his constitutional rights. Pollard also does not allege that Wexford maintained a widespread, permanent custom or practice that would constitute a policy and that caused him to be deprived of his rights, nor does he allege that his injury was caused by someone with final policymaking

4

authority. Instead, Pollard alleges that Wexford failed to correct an obvious need for better training of its medical staff. He argues that even a single constitutional injury can demonstrate a corporate entity's deliberate indifference if that injury is a "highly predictable consequence" of the entity's failure to act. In this case, according to Pollard, the single violation giving rise to Wexford's liability is the nine-month delay in his wrist surgery. This delay demonstrates an "obvious and self evident" need for more or different training of Wexford personnel, and Wexford was deliberately indifferent to that need.

Pollard relies on the Supreme Court's holding in *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 409 (1997). In *Brown*, a plaintiff alleged that a county deputy exercised excessive force during her arrest and that the deputy was therefore responsible for her injuries because the county sheriff had hired the arresting officer without adequately reviewing his background. *Board of Comm'rs v. Brown*, 520 U.S. at 397. The Supreme Court noted that in some section 1983 cases, there may be a cause of action based on a single municipal decision or action, but only if the plaintiff can prove both causation and the municipality's fault. *Id.* at 405. However, these instances are generally limited to cases in which the constitutional violation is a highly predictable consequence of the policy or custom in question. *See Woodward v. Corr. Med. Servs of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004).

Similarly, the Seventh Circuit recently reaffirmed that a plaintiff may demonstrate a constitutional violation without making a showing of numerous or repeated injuries. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (en banc). In *Glisson v. Indiana Department of Corrections*, the Seventh Circuit reversed summary judgment where it was alleged that a medical services provider for the Indiana Department of Corrections failed to implement a chronic care treatment program. *Id.* In that case, an inmate with multiple documented, serious illnesses died after seeing several medical service providers while in custody, and consistently showing a decline in his health.

5

*Id.* at 375-78. There was also evidence that the prison medical services provider declined to adopt statewide prison medical service guidelines mandating a treatment plan for inmates with chronic illnesses. *Id.* at 380. Therefore, the court concluded that a reasonable jury might find that the medical services provider consciously disregarded a known risk by failing to implement protocols for chronically ill inmates. *Id.* at 382.

However, neither *Glisson* nor *Brown* dictate the outcome of this case. Unlike the plaintiff in *Glisson*, Pollard presented no evidence that Wexford consciously chose not to adopt a policy that might prevent delays in surgery like the one he experienced. Pollard has also not presented any evidence from which a reasonable jury might conclude that Wexford was aware that its procedures for enrolling patients in surgery were causing harm or would likely cause harm to inmates. This stands in stark contrast to the plaintiff in *Glisson*, who was seen by multiple medical services providers that continually observed his decline in health while in their care. *Glisson*, 849 F.3d at 375-78. Similarly, *Brown* emphasizes that a plaintiff must demonstrate a conscious disregard for a known or obvious risk of injury. *Brown*, 520 U.S. at 412. Pollard has failed to present any evidence that Wexford did so.

In addition, Pollard alleges that this is a failure to train case. When a plaintiff alleges that the constitutional violation stems from a corporate entity's failure to train, the plaintiff must demonstrate that a particular training program caused the injury in question. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). A showing that one officer is unsatisfactorily trained is not sufficient, because otherwise corporate and municipal liability would be virtually boundless. *Id.* at 391-92. The relevant inquiry in determining whether or not corporate liability attaches in a section 1983 action is whether or not a corporate training program reflects deliberate indifference to the rights of individuals who will be affected by that program. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) ("The failure to provide adequate training to its employees may be a basis for

6

imposing liability on a municipality or private corporation, but . . . the plaintiff must show that the failure to train reflects a conscious choice among alternatives that evinces a deliberate indifference to the rights of the individuals with whom those employees will interact."). Finally, in a failure to train case, a municipality cannot be liable where the individual officer administering the policy is not liable for the underlying substantive claim. *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003).

Assuming, without deciding, that the delay in his surgery is a cognizable constitutional injury, Pollard does not identify any specific Wexford training policy that was the moving force behind his injury. *See Chatham v. Davis*, 839 F.3d 679, 686 (7th Cir. 2016) (affirming summary judgment where plaintiff offered no evidence that the alleged failure to train a prison nurse created a substantial risk of harm that defendant Wexford knew of, nor did she present evidence that such a practice caused her injury); *but see Awalt v. Marketti*, 74 F. Supp. 3d 909, 937-38 (N.D. Ill. 2014) (Durkin, J.) (denying summary judgment where plaintiff cited testimony from county representatives and correctional officers regarding the adequacy of the training programs in question). In addition, as discussed above, both the Supreme Court and the Seventh Circuit have repeatedly held that *Monell* claims based on a single violation are only viable in rare cases where a plaintiff can demonstrate that a corporate policy or custom would very obviously lead to a constitutional violation. Here, Pollard does not articulate or present evidence of any Wexford training policy or custom at all, much less one that would very obviously lead to a delay like the one he suffered. Pollard argues that his injury is indicative of an obvious need for better training of Wexford personnel. Even if the delay in his surgery does demonstrate such a need, neither his injury nor the record demonstrate that Wexford consciously disregarded a known or obvious risk of injury by implementing and enforcing the training program or practices in place. *See Brown*, 520 U.S. at 412-15.

Finally, Pollard has not presented any evidence that his injury is part of a larger pattern of constitutional violations resulting from a policy or custom evincing deliberate indifference toward

7

those whom the policy would affect. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Because Pollard has failed to identify and present evidence of any Wexford training policy or custom that would very obviously lead to the type of injury he suffered, summary judgment for Wexford is proper.

**CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

Date: 11/1/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge